IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                         CASE NO. 1:05-cr-00001-SPM -GRJ

EDGAR JOHNSON,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     This matter is before the Court on Doc. 196, Defendant Edgar Johnson's motion to vacate pursuant to 28 U.S.C. § 2255. The Government has filed a response, Doc. 199, and Defendant has filed a reply. Doc. 200. For the following reasons, the Court recommends that the motion to vacate be denied.

## BACKGROUND

     A superseding indictment charged that Defendant and a co-defendant, Farrah Stephanie Moise, "did knowingly and willfully combine, conspire, confederate, and agree together and with other persons to distribute and to possess with intent to distribute a controlled substance . . . [involving] more than five hundred (500) grams of a mixture and substance containing cocaine," in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)B)(ii). Doc. 44.[1] Following a jury trial, Defendant was convicted of conspiracy to distribute and to possess with intent to distribute less than 500 grams of a mixture or

_____

[1]Other counts against Defendant were subsequently dismissed on the Government's motion. Doc. 107.

substance containing cocaine.  Doc. 166.

Based upon the 2005 United States Sentencing Guidelines (USSG) in effect at the time of Defendant's offense, the Presentence Report (PSR) assigned a base and adjusted offense level of 24 pursuant to § 2D1.1(c).  The PSR applied career offender enhancements pursuant to § 4B1.1 because Defendant had two prior felony convictions for controlled substance offenses, resulting in an offense level of 34.  Defendant received no downward adjustment for acceptance of responsibility and accordingly his total offense level was 34.  PSR ¶ ¶ 29-38.  Defendant received a total of 11 criminal history points, which would have placed him in criminal history category V, but Defendant's career offender status subjected him to a criminal history category of VI pursuant to § 4B1.1.  PSR ¶  45.  Defendant's guideline sentencing range therefore was 262 to 327 months.  *See* USSG Ch. 5, Pt. A (Sentencing Table).

Defendant's counsel filed objections to the PSR asserting, *inter alia*, that the prior convictions cited as qualifying Defendant for career offender status were too remote in time.  PSR ¶  96.   The Probation Office responded that the prior convictions were countable in accordance with the applicable criminal history guidelines.   PSR ¶  97.  At sentencing, the Court overruled Defendant's objection, finding that although the prior convictions were for sale and possession of cocaine in 1989 and 1993, Defendant was over 18 at the time of the offenses and the term of his incarceration for those offenses extended into the 15-year period prior to the commission of the instant offense, and thus the offenses did not fall within any of the three exceptions to the criminal history guideline.  Tr. Vol. 5 at 17-18 (citing USSG § 4A1.1(a) n. 1).  The Court also overruled Defendant's objection to the drug quantity attributed to him (between 400

and 500 grams), and further noted that even if Defendant's objection as to drug quantity

was sustained he would still be subject to an offense level of 34 as a career offender.

*Id*. at 17.  The Court sentenced Defendant to 294 months' imprisonment.  *Id*. at 19.

The Eleventh Circuit affirmed Defendant's conviction and sentence.  The Court

summarized the evidence adduced at trial as follows:

> The case against defendant Johnson arose out of his selling cocaine to his co-conspirator, Major Parker, who in turn sold the cocaine to co-conspirator Farrah Stephanie Moise. Parker, who played basketball at and graduated from the University of Florida, testified for the government at trial. Parker outlined in detail how defendant Johnson supplied Parker with the cocaine Parker sold to Moise.
>
> More specifically, Moise and Parker were acquaintances. Around November 2004, Moise asked Parker if he could supply her with cocaine. Parker contacted his cousin, Josh Thomas, and Thomas advised Parker that defendant Johnson could supply Parker with cocaine. Parker testified that he knew defendant Johnson as "Bede." According to Parker, he met with defendant Johnson in November 2004 and asked Johnson to "front" him two ounces of cocaine, which Johnson did. Parker testified that this transaction took place at a convenience store in Ocala, Florida known as the "Big Apple." Parker then supplied that cocaine to Moise, who in turn sold the cocaine to an undercover police officer. Parker testified that defendant Johnson supplied him with cocaine on at least two occasions in November 2004.
>
> In late November-early December 2004, Moise asked Parker if he could get her a half kilogram (500 grams) of cocaine, and Parker contacted defendant Johnson and Thomas. According to Parker, defendant Johnson told him that Johnson would leave the cocaine at Thomas's house. Parker and Johnson agreed on a price of $11,500 for the half kilogram of cocaine. On December 7, 2004, Parker picked up 493.8 grams of Johnson's cocaine from Thomas's house, and he delivered the cocaine to Moise later that day. Moise then sold the cocaine to the same undercover police

officer for $12,800. When the undercover officer complained to Moise that the delivery was short by approximately eight to ten grams, Moise contacted Parker about the discrepancy, and Parker retrieved an additional 9.8 grams of cocaine, which he had at his house. Parker and Moise were then arrested.

Parker subsequently agreed to cooperate with the police. During a police interview with DEA Agent Timothy Durst, Parker used his cell phone to call defendant Johnson so that the police could get information about Johnson, Parker's supplier. A tape recording of that conversation was played for the jury. During the conversation, Parker asked Johnson when he wanted the "11-5" for the "half." Parker testified about the content of the recorded conversation and explained that he was asking Johnson about the $11,500 (the "11-5") that he owed Johnson for Johnson's half kilogram of cocaine (the "half").

Agent Durst also testified for the government. Agent Durst was present at the arrests of Parker and Moise, and he discovered telephone numbers for "Bede" (defendant Johnson), Thomas, and Moise stored in Parker's cell phone. Durst had Parker call Johnson in order to confirm "Bede's" identity as Johnson and to corroborate Parker's statement that "Bede" was his supplier of cocaine.

Over defendant Johnson's objection, Agent Durst also testified regarding the content of the recorded cell phone conversation between Parker and "Bede"/ Johnson. Durst first explained that he was experienced in narcotics investigations and that as a result of his experience, he had knowledge of the terms and phrases commonly used in the drug trade. Durst then explained that a half kilogram of drugs was commonly referred to as a "half" and that $11,500 was often shortened to "11-5." Durst further testified that he was present during Parker's cell phone call to defendant Johnson, and that based on his understanding of their conversation, Parker and Johnson were discussing the half kilogram of cocaine that Johnson gave to Parker and the $11,500 that Parker owed Johnson for the cocaine.

Agent Durst also testified that cell phone records established a multitude of calls between Parker and defendant Johnson, Parker and Thomas, and Parker and

Moise. Durst explained that there was a series of calls between Parker and defendant Johnson around the dates of the drug transactions, and that on the date of the final drug transaction, December 7, 2004, Parker called Johnson several times around 1:00 p.m. Parker was ultimately arrested around 2:00 p.m. Finally, Durst testified that drug dealers often took steps to hide their identities, and noted that it was difficult to track down defendant Johnson because, among other things, he was using a cell phone that was not in his name. Johnson's ex-girlfriend, Catherine Stoner, testified that she acquired the cell phone in issue for Johnson while they were dating, and at Johnson's request, she established the phone in her name.

Two other individuals testified about defendant Johnson's drug activity prior to the charged cocaine conspiracy. Alfred Wheeler testified that he had twice purchased marijuana from defendant Johnson; that Johnson had offered to sell him cocaine; and that he had often seen Johnson in Ocala in the company of Thomas, a known drug dealer. Likewise, Navarus Bryant, an Ocala drug dealer, testified that he knew defendant Johnson by the name "Bede"; that he once saw Johnson sell nine ounces of cocaine to an individual at a gym in Ocala; and that he once observed a mutual friend named Scooter sell Johnson nine ounces of cocaine at the Big Apple. According to Bryant, when Scooter sold defendant Johnson cocaine, Johnson stated that he could also obtain cocaine from Thomas, even though Thomas did not have any to sell to Johnson at that moment.

Doc. 195.

The Eleventh Circuit rejected Defendant's claims that the Court reversibly erred in admitting portions of Agent Durst's testimony and in allowing testimony of prior bad acts. *Id*. at 8. The Court noted that Defendant did not challenge his sentence on the basis of the Court's findings as to drug quantity, due to the Court's determination that Defendant qualified as a career offender. *Id*. at 7 n.2.

The instant motion to vacate followed. In this motion, Defendant asserts three

grounds for relief.  First, Defendant contends that his counsel rendered ineffective assistance when he failed to properly advise Defendant with respect to his sentencing exposure if he pleaded guilty rather than going to trial.  Specifically, Defendant contends that his counsel told him that his prior felony drug offenses were too remote to be counted against him, and that he faced a maximum sentencing exposure of 92 to 115 months if he was found guilty at trial.  Defendant alleges that had he understood his true sentencing exposure, "he would have pleaded guilty, obtained the benefit of a three level reduction for acceptance of responsibility, and assisted the government in locating other cocaine suppliers" who subsequently were arrested.  Doc. 196.

For his second claim, Defendant contends that his counsel rendered ineffective assistance by failing to request a buyer/seller jury instruction which would have given the jury the option to find that Defendant had a buyer/seller relationship with Parker and had not engaged in conspiracy.  *Id*.

Finally, Defendant contends that his trial counsel rendered ineffective assistance by failing to act on a material variance and constructive amendment of the indictment, because there was no evidence that Petitioner had ever met the named co-defendant Moise or that he had conspired with her.  *Id*.

## DISCUSSION

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.  To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional

norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686.
The court may dispose of the claim if a defendant fails to carry his burden of proof on
either the performance or the prejudice prong. *Id*. at 697. The court need not address
the adequacy of counsel's performance when a defendant fails to make a sufficient
showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir.
1986).

With regard to the performance prong of *Strickland*, a defendant must provide
factual support for his contentions that counsel's performance was constitutionally
deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must
consider counsel's performance in light of all of the circumstances at that time and
indulge in a strong presumption that counsel's conduct fell within the wide range of
reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's
performance was unreasonable, a defendant must establish that "no competent
counsel would have taken the action that his counsel did take." *Grayson v. Thompson*,
257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective,
and "it matters not whether the challenged actions of counsel were the product of a
deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281
(11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what
reasonably could have motivated counsel." *Id*. When the court "can conceive of a
reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness
without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to
disprove the strong and continuing presumption...that [counsel] did what he should

have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Where a defendant challenges a not-guilty plea based on ineffective assistance of counsel, he

must "show that there is a reasonable probability that, but for counsel's errors, he would

have pleaded guilty and would not have insisted on going to trial." *Coulter v. Herring*,

60 F.3rd 1499, 1504 (11th Cir. 1995) (internal quotations omitted).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail. . . are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This

is because the test is not what the best lawyers would have done or even what most

good lawyers would have done, but rather whether a reasonable lawyer could have

acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d

1177, 1180 (11th Cir. 2000).

### Ground One: Advice Regarding Sentencing Exposure

Petitioner contends that but for counsel's alleged erroneous advice regarding his

sentencing exposure, he would have pleaded guilty and obtained a significantly shorter

sentence. The Court finds that Petitioner is not entitled to an evidentiary hearing on this

claim, nor does it provide a basis for § 2255

relief. Section 2255 states that:

> Unless the motion and the files and records of the case
> conclusively show that the prisoner is entitled to no relief, the
> court shall cause notice thereof to be served upon the
> United States attorney, grant a prompt hearing thereon,
> determine the issues and make findings of fact and
> conclusions of law with respect thereto.

28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to

relief, then the district court should order an evidentiary hearing and rule on the merits

of the claim." *Aron v. United States*, 291 F.3rd 708, 714 n.5 (11th Cir. 2002). "The law

is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only

<u>allege</u> – not prove – reasonably specific, non-conclusory facts that, if true, would entitle

him to relief." *Id*. at 715 n.6 (emphasis in original). "A hearing is not required on

patently frivolous claims or those which are based upon unsupported generalizations.

Nor is a hearing required where the petitioner's allegations are affirmatively

contradicted in the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir.

1989) (citation omitted).

        In this case, Defendant has failed to allege facts that, if true, would entitle him to

relief. In particular, Defendant has failed to allege any reasonably specific, non-

conclusory facts showing that the Government ever made him a plea offer, let alone the

details of any such offer. In the absence of any allegations of specific facts regarding

the existence and terms of a plea offer, Defendant has failed to show that there was a

reasonable probability that the outcome of his case would have been different but for

counsel's alleged advice and, accordingly, he has failed to demonstrate that he suffered

any prejudice. Because Defendant's claim is based wholly on unsupported and

general assertions, the face of the record conclusively shows that he is not entitled to

relief on this claim, and no evidentiary hearing is warranted. *See Saunders v. United

States*, 278 Fed.Appx. 976, 979 (11th Cir. 2008) (unpublished).[2]

_____

        [2]Although unpublished opinions are not binding on this Court, they are
persuasive authority. 11th Cir. R. 36-2. In *Saunders*, the Eleventh Circuit held that a
§ 2255 movant was not entitled to an evidentiary hearing on his claim that his lawyer
failed to discover a prior conviction that resulted in a career-offender sentence. The
movant had argued that, but for counsel's erroneous advice regarding his sentencing
exposure, he would have accepted a plea offer. The Court held that the record
conclusively showed that the movant was entitled to no relief because he had provided

**Ground Two: Counsel's Failure to Request Buyer/Seller Jury Instruction**

The record also conclusively establishes that Defendant is not entitled to relief

on his second ineffective-assistance claim.  Defendant argues that his counsel should

have requested a buyer/seller jury instruction, based on his alleged buyer/seller

relationship with Parker.  At trial, the court instructed the jury:

> Of course, mere presence at the scene of a transaction or
> event, or the mere fact that certain persons may have
> assembled together and discussed common aims and
> interests, does not necessarily establish that there was a
> conspiracy. Also, a person who has no knowledge of a
> conspiracy, but who happens to act in a way that advances
> some purpose of one, does not thereby become a
> conspirator.

Tr. Vol. V at 230.  As the Government points out in its response to Defendant's motion,

this instruction allowed the jury to find that Defendant was either a bystander or a seller,

had the jury determined that the facts supported such a finding. *See United States v.*

*Brazel*, 102 F.3d 1120, 1139-40 (11th Cir. 1997) ( holding that a nearly identical

instruction that "'a person who has no knowledge of a conspiracy, but who happens to

act in a way that advances some purpose of one, does not thereby become a

conspirator,'" was sufficient to address the substance of a requested buyer/seller

instruction).  Defendant's counsel argued to the jury that there was no conspiracy, and

the instruction given by the Court was consistent with counsel's theory.  Tr. Vol. V at

204-05, 213.  Defendant has failed to show that his counsel's performance with respect

to the Court's jury instructions was in any way deficient, nor has he shown that there is

---

no description of the details of any plea offer in his motion or accompanying brief.  *See*
*Saunders*, 278 Fed.Appx. at 979.

*Case No: 1:05-cr-00001-SPM -GRJ*

a reasonable probability that the outcome of the trial would have been different but for

counsel's failure to request a different buyer/seller jury instruction.

### Ground Three: Material Variance/Constructive Amendment of Indictment

Defendant argues that his counsel rendered ineffective assistance by failing to

move for a judgment of acquittal or to object to an alleged material variance and

constructive amendment of the indictment.  Defendant argues that the indictment

charged him with conspiring with Moise, but the evidence showed that he had never

met Moise.  Doc. 196.

The Eleventh Circuit has explained that:

> The Fifth Amendment to the Constitution provides that "[n]o
> person shall be held to answer for a capital, or otherwise
> infamous crime, unless on a presentment or indictment of a
> Grand Jury[.]" A fundamental principle stemming from this
> amendment is that a defendant can only be convicted for a
> crime charged in the indictment. It would be fundamentally
> unfair to convict a defendant on charges of which he had no
> notice. Two types of problems can arise as a result of a trial
> court's deviation from an indictment. When a defendant is
> convicted of charges not included in the indictment, an
> amendment of the indictment has occurred. If, however, the
> evidence produced at trial differs from what is alleged in the
> indictment, then a variance has occurred. The distinction
> between an amendment and a variance is important in that
> an amendment is *per se* reversible error, while a variance
> requires the defendant to show that his rights were
> substantially prejudiced by the variance in order to be
> entitled to a reversal.

*United States v. Keller*, 916 F.2d 628, 633 (11th Cir. 1990) (citing *United States v.*

*Figueroa,* 666 F.2d 1375, 1379 (11th Cir.1982)).

In *Keller*, the Eleventh Circuit reversed a conspiracy conviction where the

challenged count of the indictment alleged a conspiracy between only two named conspirators, but the trial court had instructed the jury that it could find the defendant guilty of conspiracy if he conspired with "some other person" to violate the law. *Keller*, 916 F.2d 634-35. The Court held that "where the indictment specifically alleges that only two individuals conspired, *and contains no language indicating that there were unnamed or unknown conspirators*, we believe that an essential element of the offense is the identity of the individuals who agreed. This is true because the only way for the jury to convict either defendant under such an indictment is if the jury specifically concludes that the two defendants named in the indictment conspired with each other." *Id*. at 635 (emphasis added).

Defendant's indictment in this case is wholly distinguishable because it contained language indicating there were unnamed or unknown conspirators. The indictment clearly charged that Defendant conspired with Moise "and with other persons" to distribute and possess with intent to distribute cocaine. Doc. 44. The indictment thus permitted the jury to find him guilty of conspiring with Moise *or* other unnamed persons. There is no merit to Defendant's assertion that either a variance or a constructive amendment of the indictment occurred in this case, and thus there is no merit to his claim that his counsel rendered ineffective assistance for failing to assert such arguments on his behalf.

## Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the motion to vacate, Doc. 196, be **DENIED**.

**IN CHAMBERS**, at Gainesville, Florida, this 18th day of October, 2010.


*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**